IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**
        **Plaintiff,**

v.                                                No. 23-CR-00367-RBW

**ROCKNE EARLES,**
        **Defendant.**

## DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR IMMUNITY

### SUMMARY

Rockne Earles stands accused of taking criminal actions at the urging of the President on January 6, 2021. The Supreme Court of the United States recently recognized that the Presidents of the United States of America are presumptively immune from criminal prosecution for their official acts unless the United States can demonstrate that prosecuting the president would not pose a danger of interfering with the authority and functions of the executive branch. Nearly two-hundred years ago, the Supreme Court acknowledged that militia members, like Mr. Earles, who obediently followed the orders or official acts of the President are also entitled to immunity from prosecution. Therefore, Mr. Earles asserts his immunity from this prosecution and moves to dismiss the indictment against him.

### FACTS

The facts in this section are taken from the Indictment of President Trump in 1:23-cr-00257-TSC, **(Defendant's Exhibit A),** as well as the facts in the indictment of Mr. Earles (**Defendant's Exhibit B**) and are offered in support of this motion:

1.      On January 6, 2021, Donald Trump was both a candidate for reelection and the forty-fifth President of the United States.

2.      The United States maintains that for more than two months after election day, the President spread lies that there had been outcome-determinative fraud in the election and that he had actually won.

3.      The United States asserts that the President lied and that he knew his claims were false.

4.      Nevertheless, the United States contends, despite the knowing falsity of his claims the President spread those falsehoods openly and notoriously. He made efforts to make his false claims appear legitimate, create an "intense national atmosphere of mistrust and anger, and erode public faith in the administration of the election." *United States v. Trump*, 1:23-c-00257-TSC, ¶ 2.

5.      The President, the United States concedes, had a right to speak about the election and to claim, falsely, that he emerged victorious. The United States further acknowledges that other avenues for registering dismay were available to the President. As the United States acknowledges, President Trump did pursue those alternative methods, however "[h]is efforts to change the outcome in any state through recounts, audits, or legal challenges were uniformly unsuccessful." *Id*. at ¶ 3.

6.      The United States also alleges that the President began pursuing unlawful means to discount legitimate votes and attempting to subvert the election results. In doing so, the United States alleges that contrary to 18 U.S.C. § 1512 (k), President Trump engaged in a conspiracy to obstruct and impede the January 6 congressional proceeding at which the collected results of the presidential election are counted and certified. *Trump,* 1:23-c-00257-TSC, at ¶ 4(a).

7.      The United States alleges that after failing to enlist the Vice President in the effort to alter the certification of the Electoral College vote count, the President on the morning of January 6, "repeated knowingly false claims of election fraud to gathered supporters, falsely told them that the Vice President had the authority to and might alter the election results, and directed them to the Capitol to obstruct the certification proceeding and exert pressure on the Vice President to take the fraudulent actions he had previously refused." *Id*. at ¶ 10(d).

8.      The United States acknowledges in its Indictment of the former President that he made a series of false statements to the crowd in the moments before directing the crowd to descend upon the Capitol and disrupt the certification procedure. *Id*. at ¶ 12 (a)-(f); and ¶¶ 104-5.

9.      Mr. Earles stands accused of criminal acts that were performed in obedience to President Trump's directive on January 6, 2021, to descend upon the Capitol and disrupt the certification proceeding.

10.     Mr. Earles was physically capable of acting in concert for the common defense on January 6, 2021.

## ARGUMENT

I.  **Rockne Earles is immune from prosecution for his actions on January 6, 2021, that were taken in obedience to orders by the President of the United States to march on the Capitol and disrupt the certification process.**

   a.  **Before, during, and after January 6, 2021, Congress expressly empowered Presidents of the United States of America, by statute, to call forth the militia as authorized by Title 10 of the United States Code, Sections 252 and 253.**

Nearly two-hundred years of precedent as well as the modern Insurrection Act confirms that Presidents of the United States are authorized to call out the militia whenever they consider the statutory preconditions are satisfied. See 10 U.S.C. §§ 252-253, *Martin v. Mott*, 25 U.S. 19,

30-33, 37-38 (1827), and *see Luther v. Borden*, 48 U.S. 1, 43-44 (1849). Section 252 of the Insurrection Act provides:

> Whenever the President considers that unlawful obstructions, combinations, or assemblages, or rebellion against the authority of the United States, make it impracticable to enforce the laws of the United States in any State by the ordinary course of judicial proceedings, he may call into Federal service such of the militia of any State, and use such of the armed forces, as he considers necessary to enforce those laws or to suppress the rebellion.

Section 253 of the Insurrection Act states:

> The President, by using the militia or the armed forces, or both, or by any other means, shall take such measures as he considers necessary to suppress, in a State, any insurrection, domestic violence, unlawful combination, or conspiracy, if it—
>
> (1) so hinders the execution of the laws of that State, and of the United States within the State, that any part or class of its people is deprived of a right, privilege, immunity, or protection named in the Constitution and secured by law, and the constituted authorities of that State are unable, fail, or refuse to protect that right, privilege, or immunity, or to give that protection; or
>
> (2) opposes or obstructs the execution of the laws of the United States or impedes the course of justice under those laws.
>
> In any situation covered by clause (1), the State shall be considered to have denied the equal protection of the laws secured by the Constitution.

Notably, neither Section 252 nor Section 253 require a written invocation or any particular wording for an oral invocation of either section by the President. Through the modern Insurrection Act, Congress delegated to the President the totality of Congress' constitutional legislative power under Article I, Section 8, Clause 15 of the federal constitution, "To provide for calling forth the militia to execute the laws of the union, suppress insurrections and repel invasions." The effect of this immense delegation of constitutional power, according to Justice Jackson's concurring opinion in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635-6

(1952), is to raise executive power to its zenith. He wrote that, "When the President acts pursuant to an express or implied authorization of Congress, his authority is at its maximum, for it includes all that he possesses in his own right plus all that Congress can delegate." *Accord Zivotofsky ex. rel. Zivotofsky v. Kerry*, 576 U.S. 1, 10 (2015). As a result, when President Trump invoked the Insurrection Act by ordering the crowd gathered at the Ellipse to march on the Capitol and disrupt the certification of President Biden's election, his constitutional and statutory power to do so was at its apex.

    **b. For purposes of the Insurrection Act, history and prior precedent confirms that Mr. Earles, easily meets the definition of "militia".**

The Supreme Court in *United States v. Miller*, 307 U.S. 174, 179 (1939) defined "militia" as including "all males physically capable of acting in concert for the common defense." Nearly seventy-years later in *District of Columbia v. Heller*, 554 U.S. 570, 595-6 (2008), the Supreme Court reiterated the definition of "militia" given in *Miller* was consistent with founding era sources and the ordinary meaning of "militia". In *Heller*, the Court said that "militia" has the same meaning in Article I as in the Second Amendment. 554 U.S. at 596. Because "militia" has a definition that, according to the Supreme Court, is consistent with its ordinary meaning and historical understanding, there is no reason to believe that "militia" as used throughout the Insurrection Act has a different meaning which would somehow exclude Mr. Earles and all others from fitting within that definition.

    **c. Rockne Earles is entitled to the same immunity President Trump enjoys for Mr. Earles' actions that were taken in obedience to President Trump's official acts.**

In *Trump v. United States*, 603 U.S. ---, --- S. Ct. ---, 2024 WL 3237603, at 12, the Supreme Court made it patently clear that the President is not subject to criminal prosecution for his official acts unless the United States can show a criminal prosecution poses no danger of

intruding on the authority and functions of the Executive Branch. Long ago, in *Martin v. Mott*, 25 U.S. 19, 31(1827) the Supreme Court recognized that those acting in obedience to such orders, like Mr. Earles, are also entitled to the same immunity as the President. It declared:

> If [the President] does so act, and decides to call forth the militia, his orders for this purpose are in strict conformity with the provisions of the law; and it would seem to follow as a necessary consequence, that every act done by a subordinate officer, in obedience to such orders, is equally justifiable.

It is that derivative presumptive immunity from criminal prosecution to which Mr. Earles is entitled to in this case and why the Indictment must be dismissed. Mr. Earles is entitled to the same protections as the President, because the President was engaged in an official act in ordering the militia, the crowd, to descend upon the Capitol and disrupt the certification. It is irrelevant that Mr. Earles' actions allegedly violated the generally applicable criminal laws that he is accused of violating. *Trump*, 603 U.S. ---, 2024 WL 3237603, at 14.

### d. The President was taking an "official act" when he directed the crowd to descend upon the Capitol and disrupt the certification of the election.

"Under our Constitution, the executive Power—all of it—is vested in a President, who must take Care that the Laws be faithfully executed." *Seilia Law LLC. v. Consumer Financial Protection Bureau*, 591 U.S. 197, 213 (2020) (citing Art. II, § 1, cl. 1; *id*., § 3). In *Trump*, at 13, the Supreme Court provided "When the President acts pursuant to constitutional and statutory authority, he takes official action to perform the functions of his office." (internal quotation marks and citation omitted). As demonstrated above President Trump had the statutory power to deploy the militia in any manner, he determines is consistent with his inherent constitutional power to enforce the law as well as his statutory powers under the Insurrection Act. For that reason, President Trump was engaged in an "official act" when he set the crowd upon the Capitol to disrupt the certification procedure. See *Trump* at 13 (speaking to the American people

qualifies as an official act). Aside from the unreviewable statutory authority to call forth the militia, the President is obliged to enforce the law including the election laws relating to Presidential Elections. *Luther*, 48 U.S. at 45; *see also Mott*, 25 U.S. at 37 (President authorized to call forth militia to enforce the laws of the United States in times of peace).

Within the President's constitutional duty to enforce all laws is the President's obligation to enforce federal election laws that are designed to ensure federal elections, including those for President, are not beset by fraudulent acts such as providing false information in registering to vote, voting, buying votes, and people attempting to buy votes. 52 U.S.C. § 10307. How the President chooses to enforce those laws is left exclusively to the executive. See *Trump*, at 14 (executive has exclusive authority to decide which crimes to investigate and prosecute regarding allegations of election crime). As a result, enforcing election laws by calling forth the militia to address the specified exigencies, here, for the purpose of preventing claimed outcome determinative fraud is a core executive power not just a statutory function of the executive. It is the President's preclusive constitutional authority to not only enforce the law, but to determine how to do so. Because the President, without further congressional involvement, was statutorily empowered to order the crowd/militia to descend upon the Capitol and he was constitutionally obligated to enforce election laws while seeking to disrupt the certification proceeding, to the extent his actions were authorized by 10 U.S.C. §§ 252 and 253, according to the Supreme Court, he is entitled to immunity.

Aside from those functions, we also have the President's speech at the Ellipse establishing that the President was speaking to and on behalf of the America public on January 6, 2021, when he set the crowd onto the Capitol. *Trump* at 13 citing *Trump v. Hawaii*, 558 U.S. 667, 701 (2018). In *Trump*, at 13, the Supreme Court acknowledged that the President speaking on a

matter that is not obviously connected to his constitutional or statutory provision could still be considered an official act. That is important because, here, President Trump's speech at the Ellipse, among other things, addressed claims of massive fraud in the Presidential election fraud. That is further evidence that in setting the crowd upon the Capitol that President Trump was committing an official act as he was speaking about a matter this is directly related to his core constitutional and statutory obligations. The conclusion that President Trump committed an "official act" when he ordered the crowd to the Capitol to disrupt the certification proceedings is apparent from an objective review of the content, form, and context of President Trump's speech on the Ellipse. *Trump*, at 19.

The Indictment of former President Trump makes clear that the United States believes that in delivering his speech that, the President was responsible for setting the crowd onto the Capitol for the purpose of illicitly disrupting the certification proceeding. The defense disagrees. The defense contends that in doing so the President was committing an official act because he was speaking for those who voted for him, he also spoke for those Americans who believed that his reelection was "stolen". President Trump also, based on the context and content of his speech, spoke to all Americans who he declared ought to be concerned by an election system beset by massive fraud.

In his closing remarks at the Ellipse before sending the crowd to the Capitol he exhorted the crowd to fight whilst threatening that the loss of the Republic was the consequence of failing to act:

> And we fight. We fight like hell. And if you don't fight like hell, you're not going to have a country anymore. Our exciting adventures and boldest endeavors have not yet begun. My fellow Americans, for our movement, for our children, and for our beloved country. And I say this despite all that's happened. The best is yet to come. So we're going to, we're going to walk down Pennsylvania Avenue. I love

Pennsylvania Avenue. And we're going to the Capitol, and we're going to try and give. The Democrats are hopeless — they never vote for anything. Not even one vote. But we're going to try and give our Republicans, the weak ones because the strong ones don't need any of our help. We're going to try and give them the kind of pride and boldness that they need to take back our country. So let's walk down Pennsylvania Avenue. I want to thank you all. God bless you and God Bless America. Thank you all for being here.

**(Defendant's Exhibit C)** In fact, throughout his speech President Trump informed the crowd the Republic was at stake, saying "We're gathered together in the heart of our nation's capital for one very, very basic and simple reason: To save our democracy." *Id.* Not only was the American form of government at stake but he told the crowd that lesser measures would not do by saying "Because you'll never take back our country with weakness. You have to show strength and you have to be strong. We have come to demand that Congress do the right thing and only count the electors who have been lawfully slated, lawfully slated." *Id.* President Trump also contended that a consequence of certifying the election was not only massive election fraud, but "You will have an illegitimate president. That's what you'll have. And we can't let that happen." *Id.* President Trump throughout his speech identified a great many of the frauds that he claimed resulted in an incorrect outcome by saying things like "So, I mean, I could go on and on about this fraud that took place in every state, and all of these legislatures want this back. I don't want to do it to you because I love you and it's freezing out here. But I could just go on forever. I can tell you this." *Id.* When the context, content, and form are examined it is apparent that President Trump was engaged in an official act, and speaking to and on behalf of the American people. *Trump* at 13.

The context in which the statements were made, here a hotly contested election that was far from settled on January 6, 2021. The President spent the two-months after the election claiming that he had won, and that his loss was caused by massive fraud that the states wanted to

correct if only the decision were sent back to them. That is the immediate context in which the speech was made. That does not include the overall political scene that developed since President Trump's election and culminated on January 6, 2021. The Washington Post would later describe the atmosphere in Washington D.C. with 5 hours to go before the crowd was ordered to descend upon the Capitol as:

> Around the city, there was a carnival atmosphere at the various gatherings of protesters who believed they were not just witnessing history, but helping create it, with Biden's victory about to be undone.

In short, the President unequivocally told the gathered crowd that if they did not fight to stop the election that democracy would be lost, that the Republic would be lost. That is a topic that the President is not only authorized to discuss, but one which is also within his sole and preclusive constitutional domain of power to take action to prevent. See *Trump* at 8-9 (when President acts within the scope of his "exclusive authority," such as taking care that "the laws be faithfully executed," his "discretion in exercising such authority cannot be subject to further judicial examination."). For those reasons, to the extent that Donald Trump was engaged in an official act in conformity with the Insurrection Act and is entitled to absolute immunity for those actions, that immunity must extend to Mr. Earles.

## CONCLUSION

For those reasons, Mr. Earles is entitled to immunity for his actions that were taken in obedience to President Trump's directives and the Indictment must be dismissed.

Respectfully Submitted,

**FEDERAL PUBLIC DEFENDER**
111 Lomas Blvd. NW, Suite 501
Albuquerque, NM 87102
T: (505) 346-2489
F: (505) 346-2494
Martin_Juarez@fd.org

*Electronically filed July 12, 2024*
/s/ Martin Juarez
Assistant Federal Public Defender
Attorney for Mr. Earles

## POINTS & AUTHORITIES FOR ROCKNE EARLES' MOTION TO DISMISS FOR IMMUNITY

- Article I of the Constitution of the United States
- Article II of the Constitution of the United States
- *10 U.S.C. §§ 252-253
- *_Martin v. Mott_, 25 U.S. 19 (1827)
- *_Luther v. Borden_, 48 U.S. 1 (1849).
- *_Youngstown Sheet & Tube Co. v. Sawyer_, 343 U.S. 579 (1952)
- _Zivotofsky ex. rel. Zivotofsky v. Kerry_, 576 U.S. 1 (2015)
- *_United States v. Miller_, 307 U.S. 174 (1939)
- *_District of Columbia v. Heller_, 554 U.S. 570 (2008)
- *_Trump v. United States_, 603 U.S. ---, --- S. Ct. ---, 2024 WL 3237603
- _Seilia Law LLC. v. Consumer Financial Protection Bureau_, 591 U.S. 197 (2020)
- _Trump v. Hawaii_, 558 U.S. 667 (2018)