UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 23-cr-367 (RBW) |
| | : | |
| ROCKNE EARLES, | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' COMBINED OPPOSITION TO THE DEFENDANT'S MOTIONS *IN LIMINE*

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the Defendant's Omnibus Motions *in Limine*, ECF No. 46, and additional motions *in limine* filed under seal[1] ("Sealed Mot."). In his motions, the defendant, Rockne Earles, requests that the Court exclude myriad categories of evidence but generally fails to provide the Court with any reasoning explaining his positions. Ultimately, the material the defendant seeks to exclude is either plainly relevant and admissible evidence or material the government does not intend to introduce at trial. Accordingly, the defendant's motions *in limine* should be denied.

### ARGUMENT

**I. Allegations That the Defendant's Daughter Is Abused or Neglected and Reports of Media Depicting the Defendant Are Not Expected to Arise or Be Offered During Trial.**

The defendant, of his own accord, suggests that the government will seek to admit evidence "concerning any allegation that [the defendant's] daughter was neglected or abused in any way."

---

[1] The government's response is being filed without the need for sealing because it responds to the defendant's arguments while avoiding specific references that form the basis for certain sensitive or highly sensitive designations under the Protective Order, ECF No. 11, that the defendant's sealed motion references.

ECF No. 46 ¶ 1. But the government does not currently intend to offer any such evidence at trial, nor has it indicated that it would seek to admit anything suggesting the defendant "criminally neglects his daughter's health[.]" *Id.* Indeed, the government has moved to preclude the *defendant* from introducing specific instances of his character-related conduct. *See* ECF No. 41 at 23. However, should the defendant—among other methods of opening the door—be permitted to offer evidence of a pertinent trait that is rebuttable by information concerning the defendant's treatment of his daughter, such evidence would be admissible. Fed. R. Evid. 404(a)(2)(A).

Likewise, the government does not intend to offer as evidence what the government understands the defendant to be referring to as "reports that were used to compile photos allegedly of" the defendant. Sealed Mot. ¶ 3. However, the government may seek to admit the individual images and videos referenced therein as evidence at trial. These images and videos depict the defendant present and engaging in criminal conduct at the U.S. Capitol on January 6, 2021. They are relevant and highly probative because they depict the conduct for which the defendant is charged. Moreover, they are not hearsay. *See United States v. Cassell*, No. 1:00-CR-270-RCL-1, 2024 WL 1513470, at *4 (D.D.C. Apr. 8, 2024) (noting cell phone videos were "nonhearsay"). To the extent the defendant takes issue with any statements by individuals who are not the defendant contained within the images or videos, such statements will not be offered for their truth.

**II.    Statements from Tips Identifying the Defendant, Reports of Data Extraction, and Reports of Device Location Data, If Offered, Would Not Constitute Testimonial Hearsay.**

The defendant claims, without elaboration, that "statements made by [ ] anonymous tipsters that identified" the defendant should be excluded as "testimonial hearsay." ECF No. 46 ¶ 2. He similarly argues that "reports about the extraction of [the defendant's] phone" are excludable as "inadmissible testimonial hearsay[.]" *Id.* ¶ 3. The defendant qualifies his argument as contingent

on whether there existed an "opportunity to cross-examine the declarant at trial [or] an applicable hearsay exception." *Id.* While the Confrontation Clause of the Sixth Amendment generally bars the admission of testimonial hearsay in a criminal case where there is no opportunity for cross-examination, *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the defendant makes no effort to identify any specific statements. And he cannot explain how either the identifications or the reports constitute testimonial hearsay. The Court should, therefore, decline to exclude any of this evidence.[2]

To the extent the government introduces any anonymous tipster identifications at trial, the identifications would not constitute testimonial hearsay because the government would not intend to use these anonymous statements for their truth. As the Supreme Court explained in *Crawford*, "The [Confrontation] Clause [ ] does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59, n.9. Indeed, these anonymous identifications—if referenced at all—would be offered to explain how or why the investigation of the defendant progressed. *See United States v. Nelson*, 725 F.3d 615, 620 (6th Cir. 2013) ("[B]ackground information that explains how law enforcement came to be involved might not be hearsay because it is offered not for the truth of the matter asserted, but rather to show why the officers acted as they did.") *as clarified on denial of reh'g* (Jan. 16, 2014). Here, the purpose of the introduction of any such tip would be to simply alert the trier of fact as to how agents identified a name to begin their investigation.

---

[2] The defendant also presents arguments regarding identifications by law enforcement sources in his sealed motion. Sealed Mot. ¶ 5. At trial, the government does not intend to elicit the "vouching" testimony with which the defendant takes issue, and any identification statements are not inadmissible testimonial hearsay for the same reasons the government explains regarding the anonymous tips—because those statements, if offered at all, would not be offered for their truth.

Likewise, the defendant's broad request to exclude device location data, Sealed Mot. ¶ 8, and content extraction reports, *id.*; ECF No. 46 ¶ 3, which make frequent appearances in modern criminal trials, should be denied. Courts have held that such reports—generated by machines to depict raw data—are not testimonial hearsay. *See United States v. Hill*, 63 F.4th 335, 359 (5th Cir. 2023) ("We agree with the Government that the extraction reports at issue here were non-testimonial, raw machine created data."); *see also United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1110 (9th Cir. 2015) (satellite images with machine generated location markers); *United States v. Lamons*, 532 F.3d 1251, 1263 (11th Cir. 2008) (cell phone call and billing records); *United States v. Moon*, 512 F.3d 359, 362 (7th Cir. 2008) (raw drug test data; "The report has two kinds of information: the readings taken from the instruments, and [the witness's] conclusion that these readings mean that the tested substance was cocaine."); *United States v. Washington*, 498 F.3d 225, 230 (4th Cir. 2007) (raw drug test data); *United States v. Hamilton*, 413 F.3d 1138, 1142 (10th Cir. 2005) (computer generated 'header' information); *United States v. Khorozian*, 333 F.3d 498, 506 (3d Cir. 2003) (same). Any effort to admit location data or content extraction reports, in a general form, would be for the purpose of introducing specific data, including, for example, the device's locations on January 6, 2021, and media extracted from the subject device, i.e., photos, videos, messages, or other digital files. And any interpretation or analysis of the reports' data would be provided by a law enforcement witness called at trial.

### III. Social Media Statements, Videos, and Recordings Documents Are Not Inadmissible Hearsay.

The defendant asserts that a non-specific pool of material, "including but not limited to the audio and video recordings that were taken from social media platforms," ECF No. 46 ¶ 5, as well as "several videos which, in certain parts, allegedly depict" the defendant, Sealed Mot. ¶ 2, and "social media posts by individuals who are not charged in this case," *id.* ¶ 10, are excludable

because they contain inadmissible hearsay.[3] The government cannot provide a completely fulsome response to this argument without the defendant identifying the referenced pieces of media and purported hearsay statements contained therein. But even were the defendant able to single-out any specific statements, those statements would not be hearsay because the government does not intend to offer any social media statements or open-source audio and video recorded statement by individuals—who are not the defendant and not called as a witness at trial—for their truth. Those videos, presumably, would show the defendant present in the middle of a riot—context and all. Such would bear directly on the defendant's knowledge, intent, and conduct underlying this trial.

### IV. The 2019 Facebook Post and the Defendant's Social Media Posts[4] Should Not Be Excluded Under Rules 401, 402, and 403.

The defendant also takes issue with the potential admission of: (1) "a Facebook post made in 2019 that suggests when hangings begin that American made rope ought to be used," ECF No. 46 ¶ 4; and (2) a Facebook post by the defendant quoting Thomas Jefferson, Sealed Mot. ¶ 1. (1) is a screenshot of a Facebook post from the "North Dakota Republicans" page in 2019 including a comment in response by the defendant stating, "Getter done!!":

---

[3] The defendant also claims that billing documents provided by the defendant's cell service provider are inadmissible hearsay. Sealed Mot. ¶ 9. However, these documents are admissible as business records under Rule 803(6).

[4] In his sealed motion, the defendant also refers to another "social media post . . . that the United States produced in discovery." Sealed Mot. ¶ 4. The government does not intend to offer the referenced post for any purpose.

5



(2) is a screenshot of post from the defendant's Facebook page on December 5, 2020, containing various purported/misattributed quotes from Thomas Jefferson concerning the need for rebellion against the government:



Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986

F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, __ F.3d __, 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022). Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (citing Advisory Committee's Notes on Fed. R. Evid. 403, 28 U.S.C. App., p. 860). As to Rule 403, "each case will turn on the discretionary judgment of the trial court and its assessment, not of relevance, but of the evidentiary value of the government's Rule 404(b) evidence." *United States v. Crowder*, 141 F.3d 1202, 1210 (D.C. Cir. 1998). "When a given evidentiary item has the dual nature of legitimate evidence of an element and illegitimate evidence of character," the court must make a determination "'whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under 403,'" *United States v. Garner*, 396 F.3d 438, 441 (D.C. Cir. 2005). However, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998).

      Here, the Court should not preclude the use of the above screenshots at trial because they are relevant to the defendant's state of mind in connection with the charges in the Indictment. Indeed, the images show the defendant responding enthusiastically or playfully to political violence. The defendant is charged with committing political violence: assaulting law enforcement officers protecting the U.S. Capitol from a violent mob focused on disrupting the certification of a presidential election result and the peaceful transfer of power.

Realistically, even to the extent that these posts are prejudicial, their probative value is not substantially outweighed by any undue prejudice. *See United States v. Lieu*, 298 F. Supp. 3d 32, 55 (D.D.C. 2018). It is difficult to see how posts of this nature—indeed, posts that the defendant will likely paint as rhetorical or political bombast—would be so prejudicial as to unfairly sway a jury from considering the conduct he's accused of committing: violent acts against police during a riot. While the jury is free to weigh such evidence as it sees fit, allegations of substantial prejudice, in the context of the crimes charged here, ring hollow.

### V. The Government's Case Agent Should Be Permitted to Provide Commentary on Video Evidence.

The defendant requests that the Court preclude government witnesses from "narrat[ing] any video if the witness does not have personal knowledge of the events depicted in the video or is merely the custodian of record[.]" Sealed Mot. ¶ 6. This request, devoid of the foundational context only after which the government expects its case agent may be asked to provide commentary on events depicted in videos from the Capitol, should be denied.

Video narration or commentary, which is not a stand-alone category of evidence, falls at the intersection of the federal evidentiary rules governing relevance, personal knowledge of a witness, lay opinion testimony, expert testimony, and authenticity. Fed. R. Evid. 401 (Relevance); 602 (Need for Personal Knowledge); 701 (Lay Opinion Testimony); 702 (Expert Witnesses); 703 (Bases of Expert). Just as every other type of evidence must be analyzed in accordance with these rules, so must video narration. The defendant's broad request seeking to exclude this type of testimony ignores the admissibility of relevant and helpful testimony that the agent can offer and that other courts have permitted.

Asking an officer or agent to provide commentary testimony over video evidence in this manner is permissible when based on the agent's personal knowledge, *United States v. Tawfik*, No.

9

17-CR-20183, 2021 WL 1686289, at *3 (E.D. Mich. Apr. 29, 2021), and such experience may be evinced by the officer's viewing of video "with his own eyes[.]" *Kirksey v. Schindler Elevator Corp.*, No. 15-0115-WS-N, 2016 WL 5239874, at *8 (S.D. Ala. Sept. 21, 2016) (concluding where an investigating officer "viewed the surveillance video with his own eyes," his testimony "about what the video showed would plainly have a rational basis in his own perception, so as to satisfy Rule 701(a)"). And commentary testimony in this vein is helpful to the trier of fact because the officer or agent has "enjoyed significantly more time to study and compare evidence" than the fact-finder. *United States v. Shields*, 480 F. App'x 381, 387 (6th Cir. 2012).

Indeed, Courts routinely admit video narration by law enforcement witnesses with firsthand knowledge of individuals portrayed in the video for identification purposes or where the law enforcement witness has developed a familiarity with the footage from repeated viewings that is useful to jurors. *See, e.g.*, *United States v. Torralba-Mendia*, 784 F.3d 652 (9th Cir. 2015) (affirming trial court's admission of video narration by officer offering lay testimony where the officer had viewed the video numerous times and provided details helpful to the jury); *United States v. Begay,* 42 F.3d 486 (9th Cir.1994) (finding no error in the admissibly of officer's lay opinion testimony under Rule 701 narrating a video of a riot involving 200-300 people where officer had watched video over 100 times and testimony would be helpful to jury);.[5]

---

[5] *See also United States v. Garcia-Zarante*, 419 F. Supp. 3d 1176 (N.D. Cal. 2020) ("Witnesses may narrate and describe events in a video based on their perceptions. They may not speculate as to the intention of other actors captured in the video, nor may they describe the shooting as a murder."); *Humphries v. Brewer*, 2019 WL 3943074 (E.D. Michigan, Southern Div., August 21, 2019) (denying ineffective assistance habeas claims where law enforcement and civilian witnesses narrated apartment surveillance video, had personal knowledge of the physical location in which the video was taken, and the testimony was helpful to the jury); *Hunt v. Davis*, Civ. No. SA-17-CA-0986-XR, 2018 WL 2306900 (W.D. Texas, May 21, 2018) (unpublished opinion) (denying ineffective assistance habeas claim where counsel had "no valid reason" to object to officer's narration of store surveillance video where officers was present during recording and personally witnessed recorded events); *Allen v. Klee*, Case No. 14-cv-13409, 2016 WL 5791189 (E.D.
(continued . . .)

Focused commentary from the case agent the government expects to call at trial serves routine and valid purposes, such as authentication, defendant identification, and to explain to the jury relevant portions of the agent's investigation into the defendant's criminal conduct. Though the case agent was not present in D.C. for the events of January 6, she has reviewed the multitude of video evidence in this case countless times, as in *Torralba-Mendia*, and has therefore developed personal knowledge of the contents of these video recordings. Moreover, her testimony will be helpful to the jury in drawing attention to details in the videos depicting the tumultuous and violent interactions between police and civilians, including the defendant, on Capitol grounds on January 6, 2021.

The government is aware that this Court has previously ruled that video narration may be inappropriate. *See United States v. Zerkle*, No. 22-cr-100 (RBW) (D.D.C.); *United States v. Lichnowski*, No. 23-cr-341 (RBW) (D.D.C.). In *Zerkle*, this Court denied the defendant's motion *in limine* to exclude improper case agent testimony "subject to a limitation that the government may only introduce case agent testimony regarding video evidence for the purposes of: (1) authenticating the video evidence, (2) describing the location and time frame depicted by the video evidence, and (3) identifying the defendant in the video evidence, to the extent that he is able to do so in light of his in-person interaction with the defendant." *Zerkle*, ECF No. 52 at 1.

---

Michigan, Northern Division, Oct. 4, 2016) (denying ineffective assistance habeas claims where non-expert officer narrated video and his opinions were helpful to the jury where he "had the benefit of reviewing the video numerous times, giving him the opportunity to comprehend the events that were transpiring on the video and to determine the identity of the participants."); *James v. People of the Virgin Islands*, 60 V.I. 311, 2013 WL 6585638 (S. Ct. of Virgin Islands, Dec. 12, 2013) (finding no abuse of discretion where surveillance video was admitted and detective with firsthand knowledge of the events narrated video for the jury, although "better practice" for purposes of authenticating the video would have been to have a different detective testify video's accuracy).

While the government respects the Court's prior rulings, here, we believe it is incorrect for two reasons. First, as established above, while nothing bars the Court from imposing evidentiary limitations during a trial, video narration in this context is not only appropriate, but entirely lawful. Second, the Court's ruling in prior cases appeared to be bench trials, where the Court was familiar with the evidence at issue, and the ruling served an efficient and expedient purpose: the Court knew what it was looking for and could make its own determinations as a sole factfinder. Juries, however, are drastically different. While a jury speaks as a unanimous body through its verdict, it is compartmentalized throughout trial, with each juror viewing each piece of evidence in isolation and without deliberation. It is entirely reasonable to allow the government to develop its evidence through such permissible narration, assisting each juror with following the evidence and understanding its varying import. Nothing that the witness does will unfairly prejudice the defendant or mislead the jury. Ultimately, the jury will have to independently credit, not credit, or color such testimony based on the evidence and all reasonable inferences drawn from such evidence. But to disallow the witness from contextualizing such evidence deprives the jury of assessing the case in real-time.

The defendant's motion on this point should be denied or, in the alternative, resolved through specific objections to the case agent's testimony during trial. And while the government respectfully disagrees with the Court's rulings on this issue in light of the appellate court decisions cited above, the government would respectfully request that this Court, at a minimum, adopt the same limitations from *Zerkle* in this case to the extent that the law enforcement witness has not personally observed the conduct at issue.

## VI. The Prosecution Need Not Be Forced to Sanitize Its Language.

Finally, the defendant asserts that the government should be precluded "from referring to [the defendant] as a seditionist, insurrectionist, rioter, steam punk lunk,[6] or any other appellation[.]" Sealed Mot. ¶ 7. Evidence or language is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 143 (quoting Fed. R. Evid. 403, advisory committee's note). By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society. Accordingly, such charges arouse emotion—and there is nothing improper about that. Indeed, while cautioning against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney . . . may prosecute with earnestness and vigor—indeed, he should do so." *Berger*, 295 U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (*quoting United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper. *Cf. Rude*, 88 F.3d at 1548 (the use of words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

Here, the government should not be required to dilute its language and step gingerly around the defendant's crimes. Contrary to the defendant's insinuations, what took place on January 6,

---

[6] This term refers to a hashtag some Twitter users assigned to the defendant: #steampunklunk.

13

2021, was in fact a riot involving rioters, and an attack on the United States Capitol, the government of the United States, and American democracy. Indeed, after carefully considering the facts of other January 6 cases, many other members of this Court have recognized the riot as just such an attack. *See*, *e.g.*, *United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40-41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147-48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach, and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election"); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33-34, January 26, 2022 ("[T]he effort undertaken by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). None of this language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. So, too, will prosecutors need to use appropriate language[7]—and not euphemisms—to describe the nature and gravity of the defendant's conduct.

---

[7] To be clear, the government does not intend to overdramatize the evidence either. Words like "sedition" or "treason" may not have a place in this trial, but the government cannot anticipate every word used by every witness. Nor should the law or the Court compel such policing. To that end, however, the government intends to use words supported by the evidence and/or the circumstances of the case.

**CONCLUSION**

For the foregoing reasons, the defendant's motions *in limine* should be denied.

                                  Respectfully submitted,

                                  MATTHEW M. GRAVES
                                  United States Attorney
                                  D.C. Bar No. 481052

By:    /s/ *Sean J. Brennan*
           SEAN J. BRENNAN
           Assistant United States Attorney
           NY Bar No. 5954128
           601 D Street NW
           Washington, DC 20530
           Sean.Brennan@usdoj.gov
           (202) 252-7125

           */s/ Nathaniel K. Whitesel*
           NATHANIEL K. WHITESEL
           Assistant United States Attorney
           DC Bar No. 1601102
           601 D Street NW
           Washington, DC 20530
           Nathaniel.Whitesel@usdoj.gov
           (202) 252-7759