IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 23-cr-367 |
| v. | : | 18 U.S.C. § 111(a)(1) |
| ROCKNE EARLES, | : | 18 U.S.C. § 111(a)(1) |
| Defendant. | : | |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Rockne Earles, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows

and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.      The Defendant, Rockne Earles ("EARLES"), traveled from his home in North Dakota to Washington, D.C. to attend the "Stop the Steal" rally and election-related events occurring in Washington, D.C. on January 6, 2021.

9.      On January 6, 2021, EARLES attended the "Stop the Steal" rally at the Ellipse, where he listened to President Trump's speech. EARLES knew and understood from President Trump's remarks at the rally that Vice President Pence would be present at the Capitol that day for the certification of the Electoral College votes.

10. After the rally ended, EARLES walked to the U.S. Capitol, where a large crowd had gathered. EARLES wore a black knit hat, chrome-colored goggles with a black strap, a black bandana with a white pattern around his neck, a black leather jacket with zippered breast pocket, black gloves, a green shirt, and blue jeans.

11. As the crowd grew violent at the base of the Northwest Scaffolding built for the Inaugural Stage, EARLES stooped down to grab an approximately twenty-ounce bottle of Gatorade from the ground. He proceeded to throw the bottle at USCP Officer B.W., who was guarding access to the interior of the scaffolding and the steps leading up to the Capitol building. The bottle narrowly missed Officer B.W., hitting the tarp where his head had been moments before.





12. Shortly thereafter, the crowd pushed through and against U.S. Capitol Police Officers attempting to hold back rioters at the Northwest Scaffolding. The crowd advanced up the Northwest Stairs but was briefly stopped at a doorway partway up the stairs.

13. EARLES and a handful of other rioters then breached the police line that had formed at the doorway by climbing through an open area of scaffolding to the north of the doorway. Once behind the police line, EARLES reached out and grabbed USCP Officer A.C., who was attempting to fend off rioters from advancing through the doorway. EARLES then pulled Officer A.C. from the doorway and tackled him to the ground.







14.     EARLES proceeded up the stairs at the Northwest Scaffolding toward the Capitol's Upper West Terrace. He was among the first rioters to make it past the police line protecting the entrance to the Upper West Terrace.

15.     At approximately 2:17 p.m., EARLES entered the Capitol building's first floor through the Senate Wing Door—a mere four minutes after the first breach of the Capitol building, which took place at this entrance.

16.     EARLES proceeded to move through several areas of the Capitol's first and second floors, including the Supreme Court Chamber stairs, the Rotunda, Statuary Hall, the Statuary Hall Connector, the House Wing Door, the Memorial Door, and the Hall of Columns.

17.     EARLES spent approximately 27 minutes inside the U.S. Capitol building before exiting through the South Door at 2:44 p.m.

*Elements of the Offense*

18. The parties agree that, for Count Two, Assaulting, Resisting, or Impeding Certain Officers, 18 U.S.C. § 111(a)(1), requires the following elements:

    a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer A.C., an officer from the U.S. Capitol Police;

    b. Second, the defendant did such acts forcibly;

    c. Third, the defendant did such acts voluntarily and intentionally;

    d. Fourth, Officer A.C. was an officer or an employee of the United States who was then engaged in the performance of his official duties; and

    e. Fifth, the defendant made physical contact with Officer A.C.

19. The parties agree that, for Count Three, Assaulting, Resisting, or Impeding Certain Officers, 18 U.S.C. § 111(a)(1), requires the following elements:

    a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer B.W., an officer from the U.S. Capitol Police;

    b. Second, the defendant did such acts forcibly;

    c. Third, the defendant did such acts voluntarily and intentionally;

    d. Fourth, Officer B.W. was an officer or an employee of the United States who was then engaged in the performance of his official duties; *and*

    e. Fifth, the defendant acted with the intent to commit another felony. For purposes of this element, "another felony" refers to Civil Disorder under 18 U.S.C. § 231(a)(3).

*Defendant's Acknowledgments*

20. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that:

   a. EARLES forcibly and intentionally assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer A.C., who was engaged in the performance of his official duties, by grabbing Officer A.C. and pushing him to the ground.

   b. EARLES's acts in assaulting Officer A.C. involved physical contact with Officer A.C.

   c. EARLES forcibly and intentionally assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer B.W., who was engaged in the performance of his official duties, by throwing a bottle at him.

   d. At the time of his assault on Officer B.W., EARLES had the intent to commit another felony, namely a violation of 18 U.S.C. § 231(a)(3).

   e. EARLES knew at the time that both Officer A.C. and Officer B.W. were officers or employees of the United States who were then engaged in the performance of their official duties.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Sean J. Brennan*
SEAN J. BRENNAN
Assistant United States Attorney
NY Bar No. 5954128
601 D Street NW
Washington, DC 20530
sean.brennan@usdoj.gov
(202) 252-7125

> */s/ Nathaniel K. Whitesel*
> NATHANIEL K. WHITESEL
> Assistant United States Attorney
> DC Bar No. 1601102
> 601 D Street NW
> Washington, DC 20530
> Nathaniel.Whitesel@usdoj.gov
> (202) 252-7759

## DEFENDANT'S ACKNOWLEDGMENT

I, Rockne Earles, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 28 Aug 2024     *Rockne Earles*
ROCKNE EARLES
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 28 August 2024     *Martin Juarez*
MARTIN JUAREZ
Attorney for Defendant